# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | |
|---|---|
| LISA CROSSLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:18-cv-04215-NKL |
| | ) |
| HY-VEE, INC., | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Pending before the Court is Defendant Hy-Vee, Inc.'s Motion for Summary Judgment, Doc. 35. Hy-Vee brings this motion asserting that it is entitled to judgment as a matter of law as to both Plaintiff's gender discrimination and retaliation claims under the Missouri Human Rights Act (MHRA).

For the reasons set forth below, Defendant's motion for summary judgment is granted in part and denied in part. Summary judgment is granted for Defendant on Crossland's Count II, retaliation. Summary judgment is denied on Crossland's Count I, gender discrimination.

**I.      Facts[1]**

Plaintiff Lisa Crossland brings this lawsuit alleging employment discrimination under the Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 *et seq.*, against Defendant Hy-Vee, Inc. Crossland alleges that her employment as a retail grocery store manager was terminated

---

[1]     In ruling on a motion for summary judgment, the Court must view all facts in a light most favorable to the nonmoving party, and that party receives the benefit of all reasonable inferences drawn from the facts. *Robinson v. Monaghan*, 864 F.2d 622, 624 (8th Cir. 1989).

as a result of her gender, and in retaliation for an earlier lawsuit filed by her sister against Hy-Vee. Doc. 1-2 (Complaint), ¶ 14, 18.

Hy-Vee owns and operates retail grocery stores throughout the Midwest. Doc. 36, ¶ 1. Plaintiff worked at the Jefferson City Hy-Vee since 2004, and in 2011 was promoted to Manager of the Chinese and Italian Departments. Doc. 36, ¶ 3, 6. Crossland remained the Manager of these departments until her employment with Hy-Vee was terminated on September 18, 2017 Doc. 36, ¶ 7.

During the time that Crossland was employed as a manager, her sister filed a gender discrimination claim against Hy-Vee. Doc. 42, at 38. The claim against Hy-Vee was made November 13, 2012 and a lawsuit was filed on June 26, 2013. Doc. 36, ¶ 139. This lawsuit continued until February 2016. Doc. 42, at 38.

While manager, Crossland's duties included the responsibility of ensuring that a variety of logs were completed on a daily basis including temperature logs, cleaning logs, and weights and measures logs. Doc. 36, ¶¶ 10–15, 21. During the course of her employment as manager, Crossland's departments had been subject to regular audits to ensure compliance with food safety requirements. Doc. 36, ¶ 31–32, 37. From January 2016 until Crossland's termination, the departments she managed received reports of thirty-one violations, including eight violations relating to improperly maintained logs. Doc. 36, ¶ 58–93, 95 (recounting third-party audits resulting in nine "critical," three "potentially critical," and twelve "needs improvement" violations, as well as seven violations as found by the city health department); *Id.*, at ¶¶ 58, 63, 65, 69, 75, 77, 95, 104, 105 (noting eight violations related to maintenance of logs).

During this same time period of January 2016 until September 2017, other departments at the Jefferson City Hy-Vee were audited and issued violations, including the Meat Department

managed by Steve Noble, and the Kitchen Department managed by Steve Brown. Doc. 42, ¶¶ 159, 186. Over this period, Noble's department received twenty violations, including two related to improperly maintaining logs, and Brown's department received fifty-five violations. Doc. 42, ¶¶ 160–184 (recounting third-party audits resulting in ten "critical" and ten "potentially critical" violations); *Id.*, at ¶¶ 187–224 (recounting third-party audits resulting in four "critical," forty "potentially critical," and eleven "needs improvement" violations).

Crossland received disciplinary action in the form of a written warning in January 2016 and an employee consultation form in February 2017. Doc. 36, ¶¶ 58–59, 77–78. Over this same period, Managers Noble and Brown did not receive disciplinary action relating to the violations found in their departments.

On August 23, 2017, a Jefferson City Health Department audit found four "priority" violations in the Italian Department, and one "priority" and two "core" violations in the Chinese Department. Doc. 36, ¶¶ 89, 104, 105. The audit noted that in the Italian department, items on the make table were not the correct temperature, quick meals on the prep table were out of temperature range, the pizza cutting knife had debris present, and spinach in the make cooler was not date marked. Doc. 36, ¶¶ 90, 92. In the Chinese department, the audit noted rice being held in a cooker not at the correct temperature, a can opener had food debris present, and a triple sink faucet was leaking. Doc. 36, ¶ 104.

In third-party audit on September 12, 2017, the Italian Department received a "critical" violation for failure to maintain cleaning and temperature logs. Doc. 36, ¶ 95. Crossland straightened out the log books on September 12th or 13th, worked on the 14th, and then went on vacation from September 15th to through the 17th. Doc. 36, ¶¶ 97–98. On September 16, 2017, a

manager discovered that cleaning logs in the Chinese Department had not been completed for September 14th through the 16th, and notified the Store Director, Rod Dolph. Doc. 36, ¶ 99.

On September 17, 2017, the News Tribune published an article featuring the violations the Jefferson City health inspector found in Crossland's departments, Doc. 36, ¶ 102.[2] On September 18, 2017, when Crossland returned to work from a vacation, Store Director Dolph called her to his office and showed her the newspaper article featuring the violations found in her department and the incomplete logs, telling her he was going to "make an example of her." Doc. 36, ¶¶ 107–108. Dolph then terminated Crossland's employment at Hy-Vee. Doc. 36, ¶¶ 112–114. Dolph took no disciplinary action against Brown for his violations.

Crossland alleges that she was disciplined differently from the male managers at Hy-Vee, and that the decision to terminate her employment was the result of gender discrimination and in retaliation for her sister's earlier lawsuit against Hy-Vee.

**II.     Discussion**

Summary judgment is warranted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

---

[2] Nearly a year later, the same newspaper also had an article about Brown's health department violations. He received a write up thereafter, not termination. Although there is no evidence that standards had changed at Hy-Vee in the interim, the Court is not considering that evidence for purposes of this motion for summary judgment.

The Court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." *Scott v. Harris*, 550 U.S. 372, 378, 127 S. Ct. 1769, 1774 (2007) (quotation marks and citation omitted).

A.  **Gender Discrimination**

The Missouri Human Rights Act (MHRA), Mo. Rev. Stat. § 213.010 *et seq.*, makes it an unlawful employment practice for an employer to "discharge any individual, or to otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, national origin, sex, ancestry, age or disability." Mo. Rev. Stat. § 213.055.1(1)(a).

In a suit against an employer for gender discrimination in violation of the MHRA, the court uses the *McDonnell Douglas* burden-shifting framework. Mo. Rev. Stat. § 213.101.4 (2017). This framework requires the plaintiff to first carry the burden of making a prima facie case of discrimination or retaliation. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If the plaintiff meets this burden, the burden then shifts to the employer to articulate a legitimate, non-discriminatory or non-retaliatory reason for its decision. *Id.* at 802–03. If the employer meets its burden, the burden then shifts back to the plaintiff to show the employer's reason was pretextual. *Id.* at 804.

A plaintiff alleging gender discrimination under the MHRA can avoid summary judgment by showing that gender was "the motivating factor" in the adverse employment action. Mo. Rev. Stat. § 213.010(2); *see also* Mo. Rev. Stat. § 213.101(4) (amended statute expressly abrogating previous case law relating to the "contributing factor" standard). A "motivating factor" is one that "actually played a role in and had a determinative influence on plaintiff's discharge . . . ." Mo. Approved Jury Instr. (Civil) 38.05 (7th ed); *see also* Mo. Rev. Stat. § 213.010 (19).

To establish a prima facie case of workplace sex discrimination under the MHRA, an employee must demonstrate that "(1) the employee was a member of a protected class; (2) the employee was qualified to perform the job; (3) the employee suffered an adverse employment action; and (4) the employee was treated differently from other similarly situated employees of the opposite sex." *Lampley v. Missouri Comm'n on Human Rights*, 570 S.W.3d 16, 24 (Mo. 2019) (citations omitted). When deciding a case under the MHRA, courts are guided by Missouri law and federal employment discrimination case law consistent with Missouri law. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 886 (8th Cir. 2015) (citation omitted).

There is no dispute as to the first and fourth factors for Crossland's prima facie case of gender discrimination. Rather, the dispute is about whether Crossland was qualified for her job and whether she was treated differently because of her gender.

### i. Qualification for the Job

Hy-Vee asserts that Crossland did not meet the "legitimate expectations" of her job her as a manager, and therefore she cannot establish she was qualified for the position. Doc. 45, at 10. To support its argument, Hy-Vee points to Crossland's relationship with other employees about which she was counseled, Doc. 36, ¶¶ 43, 54, 57, and her failure to maintain appropriate logs, Doc. 36, ¶¶ 25, 106.

In making her prima facie case, Crossland need not show she was performing her job at the level that met Hy-Vee's legitimate expectations, only that she was "otherwise qualified" for the position. *Riley v. Lance, Inc.*, 518 F.3d 996, 1000 (8th Cir. 2008); *see also Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010) (stating that an employee establishes a prima facie case if, "setting aside [the employer's] reason for firing" the employee, that individual was "*otherwise* meeting expectations or *otherwise* qualified."); *Davenport v. Riverview Gardens Sch.*

6

*Dist.*, 30 F.3d 940, 944 (8th Cir. 1994) ("[B]y requiring plaintiff to disprove the alleged conduct violations in order to establish his prima facie case, the district court essentially required plaintiff, at the outset, to disprove defendant's alleged business reasons for its adverse employment action—in other words, to prove pretext and the ultimate issue of intentional discrimination."). Crossland had been successfully working in her capacity as manager for over six years at the time of her termination. She had completed specialized trainings and courses on multiple occasions related to her job, Doc. 36, ¶¶ 17–18, and despite the violations identified by Hy-Vee, she was still allowed to remain in her managerial role, often without any need for disciplinary action. Crossland therefore has presented sufficient evidence from which a jury could conclude that she was qualified for her position.

### ii. Disparate Treatment

When claiming disparate treatment, a plaintiff bears the burden of establishing that the employees are "similarly situated in all relevant respects." *Kerr v. Curators of the University of Missouri*, 512 S.W.3d 798, 807 (Mo. App. W.D. 2017). When determining whether other employees are similarly situated to the plaintiff, a court will consider "whether the same supervisor imposed the discipline, whether the coworkers were subject to the same standards, whether they engaged in conduct of similar seriousness, and similar factors." *Cox v. Kansas City Chiefs Football Club, Inc.*, 473 S.W.3d 107, 119 (Mo. banc 2015). The extent to which these employees must be similar, "does not require the comparator to be a clone, [but] it does require that the misconduct of more leniently disciplined employees must be of comparable seriousness." *Fatemi v. White*, 775 F.3d 1022, 1044 (8th Cir. 2015) (quotations and citations omitted). "The burden of establishing a prima facie case of disparate treatment is not onerous." *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845 (8th Cir. 2005) (citation omitted).

Crossland asserts that similarly-situated male employees at Hy-Vee received more lenient treatment for similar conduct. In particular, she asserts that managers Steve Noble and Steve Brown had been under the same supervisor, subject to the same standards, and had a history of receiving similarly serious violations, but were not terminated. Doc. 42, at 36–37; *Id.*, at ¶¶ 159–185 (Plaintiff's Additional Statements of Fact regarding Steve Noble's employment and disciplinary history); *Id.*, at ¶¶ 186–229 (Plaintiff's Additional Statements of Fact regarding Steve Brown's employment and disciplinary history).

From January 2016 until the time of Crossland's termination, Noble's meat department received twenty violations under his management, including ten critical violations, ten potentially critical, and two log-related violations. Doc. 42, ¶¶ 160–185 (recounting Noble's disciplinary record); *Id.*, at ¶¶ 164, 176. Noble did not receive any disciplinary action and was not terminated for these violations. Doc. 42, ¶¶ 160–185. Steve Brown's kitchen department had fifty-five violations under his management during this time period, including four critical and forty potentially critical violations. Doc. 42, ¶¶ 187–225 (recounting Brown's disciplinary record). Brown did not receive any discipline for these violations, and also was not terminated. Doc. 42, ¶¶ 187–218, 220–225. During the same time period with the same supervisor, and subject to the same standards, Crossland received thirty-one violations in contrast to Brown's fifty-five violations.

The record shows that Crossland, Noble, and Brown have each had violations in their respective departments while serving as managers during the period of January 2016 through September 2017, but Crossland was the only one to have been subject to disciplinary action and termination. Crossland argues that her treatment was divergent from the male managers who remained as managers despite their disciplinary records, and that this creates an inference of gender discrimination.

Hy-Vee argues that Crossland is not "similarly situated" with either of the two named managers—nor any other department manager—due to differences in her disciplinary record. Hy-Vee states that she was the only manager to receive "a critical violation from a City Inspector for food temperature issues, a critical violation from Johnson Diversey less than a month later for the same issue, and still had not corrected the issue two days later." Doc. 45, at 11. Hy-Vee also states that Crossland was unique in disregarding "specific directives" to maintain food safety logs, and additionally she had a greater number of recent log-related violations. Doc. 45, at 11 (noting that from January 2016 to August 2017, Crossland had eight log violations for her departments as compared to only two for the Meat department and zero for the Kitchen department). Hy-Vee asserts the importance of these log violations to distinguish Crossland's record from the other managers. Doc. 36, at 1-2

Though Hy-Vee notes the importance of the logs, it does not present evidence why log violations should be considered more important and more serious than the violations other managers received. In his deposition, Store Director Dolph was unable to categorize logs as more important than all other violations. Doc. 42-2, at 35:419 (Depo. of Rodney Dolph).[3] In fact,

---

[3] When discussing the importance of various violations, Dolph stated the following:
Q: . . . having product out there that the expiration has passed, how important is that to you?
A: It's important.
Q: How important is it that food is at the proper temperature?
A: Important.
Q: As compared to logs, more important or less important?
. . .
The Witness: It's Important
. . .
Q: You can't distinguish between the importance of those two?
. . .
The Witness: No.
Doc. 42-2, at 35:4–19 (Depo. of Rodney Dolph).

9

improper maintenance of logs was just one of fifteen factors identified as top reasons for non-compliance that Dolph agreed were important. Doc. 42, ¶ 148 (Hyvee's "Top 15 Reasons for Non-Compliance" which included expired products for sale, raw over ready to eat food, mold on the inside of the ice machine and incomplete temperature logs); Doc. 42-2, at 18:7–15 (Dolph acknowledged that these are all important.).

Managers Noble and Brown received numerous violations for a variety of deficiencies in their departments. From January 2016 through September 2017, Noble had more critical and potentially critical violations than Crossland, as well as two log-related violations, for which he was not disciplined. *Compare* Doc. 36 ¶¶ 58–95 (noting Crossland's nine critical and three potentially critical violations), *with* Doc. 42, ¶¶ 160–185 (noting Noble's ten critical and ten potentially critical violations). Over this same period, Brown had received more total violations than Crossland and Noble combined, for which he received no discipline. *Compare* Doc. 42, ¶¶ 187–229 (Brown's fifty-five violations), *with* Doc. 36 ¶¶ 58–95 (Crossland's thirty-one violations), *and* Doc. 42, ¶¶ 160–185 (Noble's twenty violations). Though Hy-Vee chooses to focus on log-related violations, a reasonable juror could conclude that the multiple violations received by the comparator managers for things such as expired products for sale and thawed products without a date code, were comparably serious to not filling out a logbook. This is particularly so in light of Mr. Dolph's testimony that he could not say log violations were more serious than the other violations.

Crossland has identified male managers working under the same supervisor with the same standards who arguably have a similar record of previous violations. Those managers were not fired or disciplined, whereas Crossland was disciplined and fired. Accordingly, Crossland has presented sufficient evidence to make a prima facie case of gender discrimination. The burden

therefore shifts to Hy-Vee to show it had legitimate, non-discriminatory reasons for terminating Crossland's employment.

Hy-Vee asserts "Plaintiff's chronic problems related to food safety standards put Hy-Vee at risk of bad publicity, fines, and closure. That was the reason for her termination, not her gender . . . ." Doc. 36, at 2. There is evidence that Crossland had thirty-one violations since January 2016, eight of which were log-related. Also, shortly before her termination on September 18, 2017, the Health Department inspection found seven violations under her management, including at least one which could have been prevented by earlier log maintenance. Doc. 36, ¶ 91; Doc. 36-3, at 200:10-14 (Depo. of Lisa Crossland). Crossland was gone from the store during the time period of September 2 and September 10. Def.'s Ex. 39. An inspection discovered that the September 14 logs were not maintained, before Crossland left work on the 14th. Doc. 36, ¶ 100. Crossland was on vacation from September 15 to September 17. On September 17, 2017 an article in the local paper publicized the violations uncovered in Crossland's departments by the Health Department. This is sufficient evidence to show a legitimate non-discriminatory reason for Crossland's termination. Thus, the burden shifts back to Crossland to dispute these reasons as pretextual.

"At the pretext stage, the test for determining whether employees are similarly situated to a plaintiff is a rigorous one." *Henry v. Hobbs*, 824 F.3d 735, 739 (8th Cir. 2016) (citation omitted). "To be probative evidence of pretext, the misconduct of more leniently disciplined employees must be of comparable seriousness." *Rodgers v. U.S. Bank*, N.A., 417 F.3d 845, 853 (8th Cir. 2005) (citations omitted).

As previously addressed, Crossland has presented evidence that there are at least two male managers with histories of violations in their departments who, unlike her, were not disciplined or fired as a result of their violations. The misconduct of these managers was arguably of at least

comparable seriousness and one of the male managers, Brown, had nearly twice as many violations as Crossland had.

A reasonable juror could find violations such as unclean equipment, mold in the ice, expired products for sale, thawed food with no expiration date, etc., were comparably serious to Crossland's log violations. Thus, a reasonable factfinder could review the disciplinary records of Crossland, Noble, and Brown and conclude that the misconduct of each manager was of comparable seriousness, but only Crossland was disciplined and terminated. A reasonable inference could be drawn that Hy-Vee's decision to focus on log-related violations is pretextual, and that Crossland's gender was a motivating factor in Hy-Vee's choice to terminate her employment.

Accordingly, summary judgment as to Crossland's claim of gender discrimination would not be appropriate.

### B. Retaliation

Crossland asserts that she was subject to retaliation by Hy-Vee as a result of her association with her sister who had filed a gender discrimination lawsuit against Hy-Vee and Mr. Dolph in June, 2013. Doc. 1-2 (Complaint), at 6; Doc. 42, at 38. Under the MHRA, it is unlawful for an employer to discriminate "in any manner against any other person because of such person's association with any person protected by this chapter." Mo. Rev. Stat. § 213.070(4). To make out a prima facie case of retaliation under the MHRA for discrimination based on association with protected person, plaintiff must show that (1) she was associated with someone protected by MHRA, (2) adverse employment action occurred, and (3) there is a causal connection between the association and the adverse employment action. *Sweeney v. City of Ladue*, 25 F.3d 702, 703 (8th Cir. 1994). Claims of retaliatory motive "are inherently fact-based and often depend on inferences

rather than on direct evidence." *Turner v. Kansas City Pub. Sch.*, 488 S.W.3d 719, 723 (Mo. Ct. App. 2016) (quoting *Barekman v. City of Republic*, 232 S.W.3d 675, 682 (Mo. Ct. App. 2007)).

Crossland's familial association with her sister and termination of employment satisfy the first two elements of this analysis. This is not disputed. As to a causal connection between her association with her sister and her termination, Crossland argues that the timing of disciplinary actions taken against her—actions she argues were harsher than the other managers received—shows that they were in retaliation for the case Crossland's sister had filed.

To establish a causal link, a plaintiff must present evidence that gives rise to an inference of a retaliatory motive in taking the adverse action. *Lovelace v. Washington Univ. Sch. of Med.*, 931 F.3d 698, 705–06 (8th Cir. 2019). Generally, "more than a temporal connection is required to present a genuine factual issue on retaliation." *Tyler v. Univ. of Arkansas Bd. of Trustees*, 628 F.3d 980, 986 (8th Cir. 2011) (citations omitted) (internal quotations omitted). As the amount of time between the protected act and the adverse action increases, "the inference of retaliation becomes weaker and requires stronger alternate evidence of causation." *Id.* The ability to use this temporal inference in place of other evidence of causation "vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months." *Id.* If able to establish a prima facie case of retaliation using other evidence such as her disparate treatment, the burden would still be on Crossland to demonstrate that Hy-Vee's stated legitimate reason for termination was pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973).

Crossland's sister filed her charge of gender discrimination against Hy-Vee in November 2012, filed her lawsuit against Hy-Vee in June 2013, and concluded her lawsuit by February 2016. Doc. 36, ¶ 139; Doc. 42, at 38. Crossland claims that it was shortly before the end of her sister's case that she began to have increased discipline for violations found during audits. Doc. 42, at 38.

13

Crossland notes that she was given a written warning as discipline for a critical log-related violation in January 2016, one month before Crossland's sister's case against Hy-Vee concluded, while another manager, Mr. Noble, was not given any write-up despite also having a critical violation that month. *Id.*

Though her divergent disciplinary record shows evidence of pretext, this is insufficient to create an inference of unlawful retaliation under these facts. First, more than a year and a half passed between the initial disciplinary action she claims was retaliatory and her termination, the only adverse action taken against her. Further, Crossland has provided no explanation why an employer would wait until the end of a lawsuit—more than four years after being filed—to take any retaliatory action and then wait more than eighteen months more to take an adverse action. The extended period of time between the protected activity and adverse action, without any further explanation linking these actions, so dilutes any inference of causation that a reasonable juror could not conclude that the real reason for Crossland's termination was her sister's lawsuit.

Accordingly, summary judgement for Defendant as to Plaintiff's claim of retaliation is appropriate.

### III. Conclusion

For the reasons set forth above, Defendant's Motion for Summary Judgment, Doc. 35, is granted in part and denied in part. Crossland has sufficiently stated a prima facie case of gender discrimination, and a reasonable factfinder could conclude Hy-Vee's stated reason for termination as pretextual. Accordingly, Summary judgment is denied on Crossland's Count I, gender discrimination. Crossland has not provided sufficient evidence for her claim of retaliation. Accordingly, Summary judgment is granted for Defendant on Crossland's Count II, retaliation.

/s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

Dated: November 7, 2019  
Jefferson City, Missouri